Sneed, J.,
delivered the opinion of the court.
The complainant is the wife of the defendant, ¥m. H. Nix, and brought this bill for divorce and alimony, attaching a tract of land of one hundred and one acres, alleged to have been fraudulently conveyed to Austin M. Brown with a view to defeat her alimony. The said Austin M. Brown is made a defendant, and in his answer admits the purchase of the land, but positively denies all fraud, and avers that the transaction was fair and in good faith and that he paid for the land a full and adequate consideration.
The complainant, as is alleged and shown, filed her petition for divorce first in October, 1866, and attached this same tract of land to secure her alimony. The husband and the defendant Brown and others, by their persuasions induced her to be reconciled and to return to her home which she had been obliged to leave in consequence of her husband’s illtreatment. She was induced also to dismiss her suit for divorce, her husband promising reformation and better treat *548 ment, and the defendant, Brown, assuring her that he would make her husband treat her better, or have him put under bonds to keep the peace. After dismissing her bill there was an apparent reconciliation and harmony between the parties, but very soon the husband renewed his outrages, and on the 22nd of March, 1869, he deserted his wife, leaving her and her children on the land now in controversy, which, on the nest day, he sold and conveyed to the defendant, Brown, and three days thereafter left the country.
The Chancellor granted a divorce a vinculo, but refused to disturb the conveyance to Brown.
There is a singular similitude between the facts of this case and those of Brooks v. Caughran, 3 Head, 466. That also was a bill for divorce and alimony. A previous bill had been filed attaching property, and the defendant, Caughran, and the husband wore successful in bringing about a reconciliation, making the same fair promises to the wife that were made by the defendants in this case. She was induced to dismiss her bill and return to her conjugal allegiance. These promises of amendments turned out to be illusive and insincere. A year or two afterwards the property attached, and from which the lien had been discharged by the procurement of the defendants, was sold by the husband to the defendant, Caughran, and the husband’s illtreatment still continuing, the wife filed her second bill alleging these facts and re-attaching the property. “We ' cannot doubt,” said the court in that case, “that this was a *549 concerted scheme by the defendants to procure the discharge of the wife’s lien, that both may become gainers by the defeat of said lien.” 'We are unable to distinguish the principle of that case from that now in judgment. There can be no doubt that the complainant in this case was entitled -to a divorce upon the facts stated in her first bill, and the testimony under her second bill demonstrates that her first could have been sustained by the proof. This being so, she was unquestionably entitled to a support out of her husband’s estate, and both of these defendants knew it. The defendant, Brown, was living near the land in controversy. He it was who was more active and officious than all others in causing complainant to surrender her first lien. He did this with the express and oft repeated promise to complainant that if, after her return to her husband, he did not treat her better-he would make him leave, and would see to it that the property should be hers for the support of herself and children. Notwithstanding this, and with a full knowledge of all the facts, and in the midst of the husband’s bad treatment of the wife, he bought the land.
There is no force in the fact that at some moment of harmony between the husband and the wife, she herself had counselled the sale of the land.
A court of equity would attach very little importance to such a fact in view of the surroundings of this complainant. If she did advise it, she did not know at the time that it was the deliberate purpose of her husband to abandon her and her children to their fate. *550 But it seems that the defendant, Brown, did know for five or six months before he made this purchase, that it was the purpose of the defendant to abandon his family, and with this knowledge, and in full view of the fact that the complainant was entitled to a divorce and alimony, and that he had before deprived her of her lien for it, he ventured with more boldness than discretion to buy this property. Under such circumstances a court of equity cannot and will not protect him.
The decree of the Chancellor granting the divorce will be affirmed, but so much thereof as sustains the conveyance from the defendant Nix, to the defendant Brown, will be reversed, and said conveyance held fraudulent and void as to the complainant’s claim to alimony. The cause will be remanded for such further proceedings, under the directions of the Chancellor, as will secure to the complainant a reasonable-maintenance out of the property.
The costs of this court will be paid by defendant Brown, and those of the court below as may be adjudged there upon a final disposition of the cause.